UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARA BAKER,

       Plaintiff,

v.                                     Case No. 6:17-cv-01456-PGB-KRS

LAKE MARY SURGERY CENTER,
LLC; NOVAMED SURGERY CENTER
OF ORLANDO, LLC; PARK PLACE
SURGERY CENTER, LLC; SGRY SP
MANGEMENT SERVICES, INC.;
SURGERY PARTNERS, LLC,

       Defendants.
_____/

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

       Pursuant to Federal Rule of Civil Procedure 56, Defendants LAKE MARY SURGERY CENTER, LLC; NOVAMED SURGERY CENTER OF ORLANDO, LLC; PARK PLACE SURGERY CENTER, LLC; SGRY SP MANGEMENT SERVICES, INC.; SURGERY PARTNERS, LLC ("Defendants") move for final summary judgment on all claims asserted in the Third Amended Complaint filed by Plaintiff. As set forth below, the application of settled law to pertinent facts establishes that Defendants have not deprived Plaintiff of unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, nor has Plaintiff been the victim of unlawful FLSA retaliation of any sort. The undisputed evidence demonstrates that no genuine issues of material fact exist, and based on the facts and law discussed below, Defendants are entitled to judgment as a matter of law because:

1.      Plaintiff cannot prove that she was not paid overtime at one and a half times her regular rate of pay for time worked over forty (40) hours, or that when she notified her supervisor of any error in her paycheck it was not corrected;

2.      Plaintiff admits that she did not engage in any protected activity under the FLSA, and that she suffered no adverse employment action, specifically the alleged constructive discharge, because of Defendants' inability to accommodate her changed school schedule.

## MEMORANDUM OF LAW

## I.    UNDISPUTED MATERIAL FACTS[1]

### A.    PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS

1.      Plaintiff began working for Defendant Lake Mary Surgery Center ("Lake Mary") as a GI Tech on an hourly, per diem basis, on October 7, 2013.  Przychocki ¶ 4 (attached as **Exhibit A**).

2.      As a GI Tech at Lake Mary, Plaintiff was responsible for logging biopsies, cleaning equipment, and assisting physicians during GI procedures. Baker 48: 4-9 (excerpts attached as **Exhibit B**).

3.      At Lake Mary, Plaintiff reported to the Lake Mary administrator Meagan Przychocki.  Przychocki ¶ 3.

4.      Plaintiff later transferred to, and began working for, Defendant Novamed Surgery Center of Orlando ("Downtown Orlando"), as a Materials Manager on an hourly, full time basis, beginning on December 7, 2014.  Sturm ¶ 4 (attached as **Exhibit C**).

---

[1] References herein shall be as follows:  depositions - "[Deponent Last Name] pp#:ln#"; declarations – "Dec. [Declarant Last Name]"; filings from instant case – "Dkt. [#]."

5.     As a Materials Manager, Plaintiff was responsible for the daily management of all inventory and all processes related to ordering, receiving, and distributing medical supplies and surgical equipment.  Baker 134: 16-21.

6.     At Downtown Orlando, Plaintiff reported to the Downtown Center's administrator Angie Sturm.  Sturm ¶ 3.

7.     Plaintiff later transferred to and began working for Defendant Park Place Surgery Center ("Park Place"), as a Materials Manager on an hourly, full time basis, beginning on July 6, 2015, where she remained until her separation on April 28, 2017.  Przychocki ¶¶ 5, 21, Baker 40: 14-16.  Plaintiff's actual last day of work was April 25, 2017.  Przychocki ¶ 20; Baker 42: 10-12.

8.     As a Materials Manager at Park Place, Plaintiff reported to the Park Place administrator Christina Geiger from July 2015 until on or around December 2016, and then reported to Przychocki until her separation on April 28, 2017.  Przychocki ¶¶ 5, 21, Geiger ¶ 2 (attached as **Exhibit D**), Baker 40: 14-16.

9.     As a Materials Manager, Plaintiff did not perform her job duties particularly well. The surgical materials needed by the centers were frequently understocked or missing. Przychocki ¶ 6.  In such an occasion, the center would have to locate and borrow surgical materials from another center.  Przychocki ¶ 6

### B.     TIME KEEPING POLICIES & PROCEDURES PLAINTIFF FAILED TO FOLLOW

10.     The time keeping procedures for Defendants require employees to "clock-in and clock-out" on a physical time clock at the Lake Mary, Downtown Orlando, and Park Place centers (collectively called the "centers").  Baker 14: 5-13. To do so, Plaintiff used a time card to swipe through a card reader placed at the front desk of the centers. Baker 14:5-8.

11.     However, Plaintiff failed to properly clock-in and clock-out when she worked within her assigned center.  Baker 14: 21-25; 15: 1.  At other times, when Plaintiff worked at

another surgery center, depending on the needs of that center, she was responsible for advising her supervisor of her time worked. Baker 48: 19-25.

12.     Regardless of whether she failed to properly use the center's time clock or whether she could not, Plaintiff admits that she notified her supervisor of her time worked, and any later corrections to a previously submitted time record, via e-mail, on a piece of notebook paper, text message, or verbally.  Baker 15: 6-19; 48: 19-25. In addition, while Plaintiff worked at Park Place, there was a book for employees to record any edits to their time cards, and Plaintiff also used that form of communication to record, *inter alia*, whether she worked through lunch or other times outside her regular work day.  Baker 15: 8-9.

13.     Where Plaintiff reported time edits or additional time was reported timely to her supervisors through any means, Sturm, Przychocki, and Geiger would add Plaintiff's reported work time to her time card to insure she was paid properly. Where her hours exceeded forty (40) hours in any workweek, she received overtime pay. Sturm ¶ 5, Przychocki ¶ 7, and Geiger ¶ 3.

14.     Where Plaintiff reported time edits or additional time was reported after the close of an applicable payroll cycle, Sturm, Przychocki, and Geiger would add Plaintiff's reported work time to her time card to insure she was paid properly.  Sturm ¶ 6, Przychocki ¶ 8, and Geiger ¶ 3. In so doing, if such time would have been overtime in the week worked, then she received the proper adjustment to her pay on the subsequent paycheck as overtime.  Sturm ¶ 6, Przychocki ¶ 8, and Geiger ¶ 3.

15.     Plaintiff was able to review these time records contemporaneously each pay period through her online access to the payroll system and communicate any desired corrections. Baker 16: 21-25; 17: 1-10.

16.     Defendants' Employee Handbook states, in pertinent part, "If you have questions or believe you are not required or permitted to properly record your time, please contact the payroll administrator or the human resources department." Baker 102: 1-6, Def's Ex. 5.

17.     Defendants' Employee Handbook also states, in pertinent part, "If an employee feels that an improper deduction or overpayment or underpayment has been made, he/she should immediately contact his/her supervisor or the payroll administrator."  Baker 111: 7-13, Def's Ex. 5. Sturm also encouraged Plaintiff to contact human resources with any problems with her supervisors, telling Plaintiff that Human Resources manager Susan Gearhart was "fabulous." Baker 107: 5-25.

18.     Plaintiff, at the end of certain pay periods, testified she would review her time card punch records occasionally for errors. Baker 16: 21-25; 17: 1-10.

19.     Plaintiff, however, testified she reported no errors in her time card or paycheck to the payroll administrator.  Baker 17: 11-13.

20.     Plaintiff also testified she never contacted Defendants' payroll administrator to correct any underpayment of time.  Baker 15: 20-23.

21.     Plaintiff freely admitted that she did not always submit accurate time records. Baker 85: 7-15.

22.     Importantly, Plaintiff does not claim she was told by Sturm, Przychocki, or Geiger, or anyone employed by Defendants, that she should not provide accurate time records.  Baker 86: 21-25; 87: 1-19. In fact, she was encouraged at all times to submit accurate time records.

23.     Likewise, Plaintiff does not claim that Sturm, Przychocki, or Geiger did not permit her to properly record her time.  Baker 102: 7-23.

24.     Plaintiff testified she was paid for all hours reflected in her time card sheets, including any overtime hours worked over a 40 hour work-week. Baker 99: 15-19, Def's Ex. 4. Plaintiff frequently received overtime compensation. Przychocki ¶ 14. Moreover, Sturm, Przychocki, and Geiger <u>never</u> altered Plaintiff's time card to reduce Plaintiff's time.  Sturm ¶ 11, Przychocki ¶ 13, and Geiger ¶ 7.

### C.     PLAINTIFF'S WORK FROM HOME

25.     Beginning on or around November or December 2014, Plaintiff began performing some duties at home so she could complete her duties she could not complete during the workday. Baker 85: 3-6. Defendants provided Plaintiff with a laptop for this purpose.  Baker 85: 3-6; 89: 1-3.

26.     Defendants also permitted Plaintiff to work from home when her mother was ill in or around October 2016.  Gearhart ¶ 4 (attached as **<u>Exhibit E</u>**), Baker 79: 13-15.  As set forth in the Employee Handbook, Gearhart, reminded and instructed Plaintiff she was to accurately track and report her time when working from home.  Gearhart ¶ 4.

27.     When Plaintiff worked from home on the laptop provided by the Company, for Defendants to pay Plaintiff accurately, Plaintiff would provide her supervisors with the correct and accurate hours worked by her before the close of payroll.  Baker 83: 11-15, Sturm ¶¶ 7-8, Przychocki ¶¶ 9-10, and Geiger ¶ 5.

28.     To the extent Plaintiff worked from home and reported her time to her supervisors, Sturm, Przychocki, and Geiger, the respective supervisor recorded Plaintiff's reported work time to her time card to insure she was paid; and, where her hours exceeded forty (40) hours in any workweek, she received overtime pay. Sturm ¶¶ 7-8, Przychocki ¶¶ 9-10, and Geiger ¶ 5.

### D.   SINGLE INSTANCE OF ALLEGED UNPAID OVERTIME[2]

29.   Even though Plaintiff knew that all of her supervisors corrected her time to reflect any alleged time worked without question, Plaintiff admits that only one instance of time worked was not immediately reflected on her pay, and she reported this single error regarding her time to Sturm and Przychocki only.  Baker 17: 11-13.

30.   Specifically, Plaintiff reported to Sturm about missing time from Saturday, November 21, 2015 – the last day in the pay period after she had turned in her time the previous day – not being reflected on her paycheck for that period.  Baker 111: 22-25. Plaintiff claims Geiger "took [her] hours that [she] worked on Saturday at Orange City, paid [her] straight time, and put them onto another day."  Baker 112: 16-18.  Plaintiff testified she reported this to Sturm in November 2015, and reported this to Przychocki at some time before Przychocki becoming her supervisor at Park Place in December 2016.  Baker 112: 16-18.

31.   On that day, Sturm asked Plaintiff to work on November 21, 2015, at the Orange City center as a GI Tech for endoscopy procedures with Dr. Gupta.  Baker 111: 22-25; 112: 1-5. Sturm instructed Plaintiff to notify Geiger of her time because Sturm did not have access to Plaintiff's time, as Geiger was her supervisor. Sturm ¶ 9, and Baker 246, Pl's Ex. 1. Plaintiff did not report the time to Geiger until after payroll had closed, so it could not be reflected on Plaintiff's paycheck for that pay period.  Geiger ¶ 4.

---

[2] While Plaintiff produced an "after the fact" summary and annotation of her timesheets alleging times which she believed she was not paid, as described in more detail *infra*, Plaintiff admits that although she had contemporaneous access to these time and pay records during her employment, she only specifically brought one specific instance of omitted and  unpaid overtime to her supervisor – and that she was paid overtime for that omitted time at not only the overtime rate, but also at the premium pay rate.  As described *infra*, Plaintiff's "time records" she relies upon were printed and annotated following her termination, and her summary is based on objected to "attorney-client privileged" communication (objected to disclosure at deposition); none of which is admissible evidence, but rather qualify as after the fact self-serving hearsay. *McCaskill v. Ray*, 279 Fed. Appx. 913, 914 (11th Cir.2008) (Hearsay cannot be considered on a motion for summary judgment).

32.     To insure Plaintiff received proper payment for the November 21, 2015, work, Geiger reported it as premium pay and insured it would be treated as overtime on Plaintiff's very next paycheck.  Przychocki ¶ 15, Ex. A (Def 000021-000022).  Plaintiff does not dispute being paid for the time she worked with Dr. Gupta on November 21, 2015.  Rather, Plaintiff admits she believed it was possible that her work time for this procedure with Dr. Gupta was paid during a different pay period.  Specifically, Plaintiff was asked and answered as follows:

> Q.     Ms. Baker, are you saying that you believe you were paid several pay periods after the fact for the time that you worked with Dr. Gupta?  Is that what you were just saying in the answer?
>
> A.     I thought I was, but I don't see it here.

Baker 251: 13-17.

33.     A review of Plaintiff's time records reveals, as stated above, Plaintiff was paid for her work for Dr. Gupta on the very next pay period, receiving the 9.25 hours of premium pay overtime on Saturday, December 5, 2018.  Przychocki ¶ 15, Ex. A (Def 000021-000022).

34.     Plaintiff could recall no other specific instance where during her employment she reported compensable time worked to her supervisors Sturm, Geiger, or Przychocki, but was not paid.  Baker 192: 17-25; 193: 1-25; 194: 1-10; 196: 19-25; 197: 1-11.

35.     Rather, Plaintiff claims, regarding Geiger, that generally, "if [Plaintiff] wrote 'no lunch,'" on her timecard "and if it went over 40, [Geiger] wouldn't pay [her] for that."  Baker 220: 12-18.

36.     Plaintiff, like all non-exempt employees of Defendants, was expected to take an uninterrupted thirty (30) minute lunch break each day.  Przychocki ¶ 11, Baker 194: 18-20.

37.     Plaintiff, occasionally, would report to her supervisors, Sturm, Przychocki, and Geiger she would work through her lunch period.  Baker 93: 16-25; 94: 1-2.  However, the time

provided by Plaintiff to her supervisors and her pay records confirm that Plaintiff was paid for time where she provided notice she had worked through her lunch period. Przychocki ¶¶ 12, 14, Ex. A, Baker 199: 4-12. Specifically, upon receiving this information from Plaintiff, Sturm, Przychocki, and Geiger would mark "no lunch" on Plaintiff's time card for that date, which credited Plaintiff with thirty (30) minutes of work time for that day and, where her hours exceeded forty (40) hours in any workweek, she received overtime pay. Sturm ¶ 10, Przychocki ¶¶ 12, 14, and Geiger ¶ 6.

38.     In her Third Amended Complaint, Plaintiff also claims "Defendants would put down that Plaintiff used personal time off ("PTO") when in fact, Plaintiff had performed work for Defendants that defendant designated as PTO."  Dkt. 39 ¶ 17.

39.     However, in actuality, Plaintiff reported to Gearhart in December 2016, that on one occasion, Geiger had given her PTO on August 16, 2016, when she claimed she actually worked that day from 7:45 a.m. to 5 p.m. with no lunch. Gearhart ¶ 5. Gearhart promptly advised payroll to correct Plaintiff's PTO bank. Gearhart ¶ 5.  However, a review of Plaintiff's time records reveals, that even if she had worked that day as she claims, she would not had received any overtime compensation for that week.  Przychocki ¶ 16, Ex. A (Def 000060-000061).  Had Plaintiff worked on August 16, 2016, she would have worked only 37.07 hours. Przychocki ¶ 16, Ex. A (Def 000060-000061).[3]

E.     PLAINTIFF'S PURSUIT OF NURSING DEGREE DURING EMPLOYMENT

40.     While Plaintiff was working for Defendants, Plaintiff was enrolled in classes at Herzing University beginning in 2014.  Baker 23: 21-25; 24: 1-3. She admits that she often would

---

[3] In any event, PTO is not governed by the FLSA.

"attend" online classes at the same time she was working for Defendants.  Baker 34: 16-25; 35: 1-10.

41.    In or around the beginning of 2017, Plaintiff and Przychocki discussed Plaintiff's nursing program. Przychocki ¶ 17, Baker 213: 15-25; 214: 1-3.  Przychocki assumed Plaintiff would enroll in a night program. Przychocki ¶ 17.  Przychocki only learned that Plaintiff had been attending classes when she observed Baker taking an online class while she was at work. Przychocki ¶ 17, Baker 34:1-25; 35:1-25; 36:1-10. Przychocki asked Plaintiff what her class schedule was and if it would be interfering with work. Przychocki ¶ 17. Plaintiff told Przychocki her schedule would be changing but did not provide Przychocki with a schedule. Przychocki ¶ 17.

42.    On April 10, 2017, Plaintiff provided Przychocki with a proposed school schedule for classes each Monday and Wednesday from 1:00 p.m to 6 p.m. Przychocki ¶ 18. Przychocki informed Plaintiff that her class schedule could not be accommodated.  Przychocki told Plaintiff that Park Place required a full time materials manager and the schedule presented by Plaintiff did not meet the needs of the center.  Przychocki ¶ 18.  Przychocki asked Plaintiff if she would be interested in working on a per diem basis in a different job at Park Place. Przychocki ¶ 18.

43.    On April 20, 2017, Przychocki and Plaintiff discussed whether Plaintiff could switch to the night program for her classes.  Przychocki at ¶ 19.  Plaintiff informed Przychocki she could not switch to the night program because there was no seat available for her, and that she was not interested in working on a per diem basis.  Przychocki at ¶ 19.  Accordingly, Przychocki explained to Plaintiff that her school schedule simply could not be accommodated, because she could not maintain her full time status, and asked Plaintiff what she intended to do regarding her employment.  Przychocki at ¶ 19.

44.     Plaintiff admitted that she can identify no other materials manager permitted to go to school for two days a week, for several hours per day, as Plaintiff was requesting to do.  Baker 213: 6-11.

45.     The last day Plaintiff reported to work was on April 25, 2017.  Przychocki at ¶ 20.

46.     Plaintiff's date of separation from employment was April 28, 2017. Przychocki at ¶ 21. On her separation paperwork, the reason for her separation is listed as a schedule conflict. Przychocki at ¶ 22, Ex. B.  Plaintiff believes it was "assumed" that she "was not coming back." Baker 41:19-25; 42: 1-3.

47.     Interestingly, notwithstanding Plaintiff's allegations that her job required many, many  hours of overtime to complete her tasks, Plaintiff admitted that her school schedule should have been easily accommodated because her job can be completed in 32 hours a week.  Baker 215: 1-7.

48.     On April 29, 2017, the day after her termination, Plaintiff printed copies of her time cards, which she downloaded electronically from ADP. Baker 91: 6-25.

49.     After printing these time cards on April 29, 2017, Plaintiff annotated some of the time entries in handwriting to reflect additional time she believed she worked for which she was believed she was not paid. Baker 92: 1-22.

50.     On April 30, 2017, Plaintiff sent an e-mail to Przychocki, Sturm, and Gearhart in which she complained she previously worked overtime for which Defendants did not compensate her. Przychocki ¶ 23, Gearhart ¶ 7, Sturm ¶ 13.  Following the e-mail, Plaintiff spoke with Gearhart over the telephone and requested a separation package be offered to her.  Baker 216: 20-25.

51.     Given Plaintiff's tenure with the Company, lack of any significant performance issues, and reason for her resignation (i.e., her decision to continue her education), Defendants

honored Plaintiff's request and provided her with a separation package with the usual terms. Baker 217: 19-25; 218: 1. Plaintiff apparently changed her mind, and did not sign the separation package because she "didn't agree with it." Baker 218:4-5.

52.     Contrary to her allegation in the Third Amended Complaint, wherein Plaintiff claims she submitted a complaint regarding unpaid overtime compensation to a Human Resources Manager named Lisa Prosperi, Plaintiff does not recall whether she spoke with anyone in Human Resources regarding unpaid overtime compensation prior to the April 30, 2017 e-mail. Baker 201: 10-25; 202: 1-12. Prosperi received no such complaint. Prosperi ¶ 3 (attached as **Exhibit F**).

53.     In this lawsuit, Plaintiff has filed Amended Verified Responses to Court Interrogatories claiming she is owed $10,801.94 in alleged unpaid overtime. Dkt. 50, p. 4. Plaintiff relies solely upon the not filed "… detailed spreadsheet of these hours week by week with additional breakdown of the calculations. Due to size, the spreadsheet is not being filed with the Court." *Id.* at n. 2. During her deposition, Plaintiff testified this spreadsheet is "a spreadsheet of hours [she] wasn't paid for" Baker 113: 15-22, created by one of her attorneys in this case, Robert Sutton based on a different spreadsheet that Plaintiff provided to him and which Plaintiff has not produced in this case to either the Court or Defendants. Baker 113:23-25. Plaintiff's attorney's objected to the undersigned's request for the Plaintiff's original spreadsheet based on attorney client privilege. Baker 114: 1-9.

## II.   ARGUMENT

In her Third Amended Complaint, Plaintiff asserts Defendants owe her unpaid overtime due from her alleged off-the-clock work. She predicates her claim on time spent on "a lap top computer that Plaintiff performed work on for Defendants at night after leaving the center," and "lunch times" where she claims Defendants "were aware" she was working. She also claims that

her "time cards" were purportedly "altered by Defendants to make it appear as though Plaintiff did not work more than forty (40) hours per workweek," and that "Defendants also put down that Plaintiff used personal time off ("PTO"), when in fact Plaintiff had performed work for Defendants that Defendant designated as PTO."  Dkt. 39 at ¶¶ 13-17.  It is Plaintiff's burden to demonstrate that she was not paid overtime, and the undisputed evidence demonstrates there is no genuine issue of material fact on whether Defendants paid Plaintiff for all time she reported as having worked -- including many hours of overtime.  Plaintiff cannot present a mere scintilla of evidence to show that Defendants deprived her of overtime pay in any such way, nor can she fabricate an exhaustive spreadsheet of alleged unpaid overtime she refused to share with undersigned counsel to somehow justify her convoluted claims.

Further, Plaintiff's revisionist version of the events leading to Defendants' decision not to accommodate her school schedule and her later resignation to pursue her education cannot defeat summary judgment.  Plaintiff simply has not been the victim of unlawful FLSA retaliation.

A.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party "to the extent supportable by the record."  *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007).  However, the mere existence of a *scintilla* of evidence to support a plaintiff's position is insufficient to avoid a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 252 (1986).  The non-moving party must produce substantial evidence to defeat a motion for summary judgment.  *Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004).  Importantly, "[e]vidence inadmissible at

trial cannot be used to avoid summary judgment." *Corwin v. Walt Disney Co.*, 475 F. 3d 1239, 1249 (11th Cir. 2007) (citing *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir.1976)).  Summary judgment is appropriate even if "some alleged factual dispute" between the parties remains, so long as there is "no genuine issue of material fact."  *Scott*, 550 U.S. at 380. Here, even viewing Plaintiff's allegations in the most favorable light, there are no genuine issues of material fact for trial, and Defendants are entitled to summary judgment as a matter of law.

**B.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S CLAIMS FOR OVERTIME COMPENSATION**

To prove a FLSA overtime violation, Plaintiff bears the initial burden of proof and must establish that Defendants suffered or permitted her to work without compensation. *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1314 (citing 29 U.S.C. § 201 et seq.). Plaintiff must demonstrate that (1) she worked overtime without compensation and (2) Defendant knew or should have known of the overtime work. *Id. citing Reich v. Dep't of Conversation and Nat. Res.*, 28 F.3d 1076, 1081-82 (11th Cir. 1994); 29 C.F.R § 785.11.  Where the employer has records of time, the employee must come forward with sufficient evidence to call such records into question. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). This is especially true where the employer's kept records reflect overtime hours. *See Etienne v. Inter–County Security Corp.*, 173 F.3d 1372, 1376 (11th Cir. 1999) (noting that "this circuit has employed the burden-shifting analysis in situations where no records were kept at all or no overtime was recorded").

Here, (a) Defendants require employees to maintain accurate time records, (b) Plaintiff had access to her time records throughout her employment, (c) Defendants unquestionably and regularly paid overtime to Plaintiff based on all of her recorded time, (d) Plaintiff admits she failed to submit accurate time records, and (e) Plaintiff made no complaint to Defendants of unpaid overtime during her employment, even though she knew that Defendants always paid her for all

hours submitted. Baker 15: 20-23; 16: 21-25; 17: 1-13; 85: 7-15; 86: 21-25; 87: 1-19; 102: 1-6, Def's Ex. 5.; 102: 7-23; 111: 7-13, Def's Ex. 5. Plaintiff, who predominantly worked her own schedule from her home, cannot provide sufficient evidence to call Defendants' time records into question where her only "evidence" that Defendants allegedly knew that she worked over forty (40) hours a week consist of post-termination download and annotation of her time records and a spreadsheet created by her attorney.   Plaintiff cannot carry her burden of proof she was uncompensated for any time – overtime or otherwise – on or before her separation.

Rather, the undisputed material facts demonstrate Plaintiff was responsible for accurately maintaining and submitting her time worked and was always compensated overtime for any overtime hours she reported on her time sheets – whether reported timely or not.  A review of Plaintiff's time sheets and payroll records unequivocally demonstrates that for all occasions Plaintiff reported overtime work while she was employed, she received the requisite overtime compensation she was due. Plaintiff has not and can offer no evidence or records to demonstrate that she did in fact work any alleged overtime for which Defendants did not compensate her or that alleged PTO hours paid would have resulted in overtime if she had worked them. She merely contends that somehow, years later, she worked more hours than she previously reported or worked through lunch, based on her own hindsight and unsupported recollection.  "[S]tatements contained in depositions and affidavits that are completely unsupported by any other record evidence are insufficient to resist summary judgment." *Citing Castillo v. Lara's Trucking Inc.*, 2017 WL 945188, *6 (S.D. Fla. Fed. 10, 2017) (citing *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.... One who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an

issue for trial."). Plaintiff's "after the fact" annotation of years of time records after her termination -- and any summary created from them -- are nothing more than conclusory, unsupported allegations in the face of the contemporaneous time records, edit logs, and pay records.

While Plaintiff attempts to rely on these "after the fact" annotated time records and demonstrative spreadsheet created by her counsel, such is not admissible evidence, but is self-serving, inadmissible hearsay. "Generally, evidence inadmissible at trial may not be considered on a motion for summary judgment." *Ekokotu v. Federal Exp. Corp*., 408 Fed. Appx. 331, 335 (11th Cir.2011) (citing *Corwin v. Walt Disney Co*., 475 F.3d 1239, 1249 (11th Cir.2007)). Hearsay cannot be considered on a motion for summary judgment. *McCaskill v. Ray*, 279 Fed. Appx. 913, 914 (11th Cir.2008); *see also Macuba v. Deboer*, 193 F.3d 1316, 1324–25 (11th Cir.1999) (although evidence otherwise admissible may be accepted in an inadmissible form at summary judgment stage, hearsay could not be reduced to admissible form). Plaintiff has failed to carry her burden of proof of establishing that she worked overtime for which she was uncompensated, and her claim for unpaid wages, including overtime, under the FLSA fails.

Notably, courts confronted with FLSA claims have clarified that claimants charged with the responsibility of completing their own time cards cannot benefit from unpaid overtime claims unless they can affirmatively establish that the employer knew or should have known of the overtime work. *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1314-15 (11th Cir. 2007). Knowledge of unpaid overtime may be imputed to the employer when its supervisors or management actively encouraged artificially low reporting. *Id.,* at 1319; *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (knowledge of unpaid overtime imputed to employer because supervisor "both encouraged artificially low reporting and squelched truthful timekeeping"). An employer is said to have constructive knowledge of an employee's overtime

work when it has reason to believe that its employee is working beyond her shift. *Allen*, 495 F.3d at 1319.

Here, because Plaintiff worked at home often on her own "schedule," it was entirely reasonable for Defendants to rely on Plaintiff's report of her time and instructed and reminded her to accurately report her time.  Defendants had no reason to believe that Plaintiff was working an amount of hours over and above what she reported, even if Plaintiff sent the occasional text message outside of normal business hours, as Plaintiff did not work normal business hours.  This is particularly true where Defendants knew that Plaintiff routinely was behind on insuring the centers were sufficiently stocked with surgical materials and submitted considerable handwritten overtime requests for which she was paid.

In the present matter, Plaintiff testified that she did not report all of her hours worked. Baker 85: 7-15. Without reason to believe otherwise, under circumstances where Plaintiff performed hours of work outside of the center on her own schedule, and previously reported overtime hours to Defendants for which she was paid, Defendants now cannot be held to have constructive knowledge of any alleged additional overtime work Plaintiff alleges after her termination and for which she was solely responsible for tracking and reporting.  *See Debose v. Broward Health*, 2009 WL 4884535 at *12-13 (S.D. Fla. 2009) (court held that defendant employer did not have actual or constructive knowledge of plaintiff's alleged overtime where defendant had no reliable evidence demonstrating that employees were routinely working unpaid overtime in violation of its policies, no way of knowing when an employee skipped a meal break without recording it or otherwise notifying someone, and/or where plaintiffs failed to introduce evidence of anything similar to the inconsistent reports, data, or documentation that should have alerted plaintiffs were working unpaid overtime).  No supervisor ever told Plaintiff not to report

compensable hours worked or altered Plaintiff's time cards. As is clear from the time and pay records, Plaintiff regularly reported overtime work for which she received overtime compensation without hesitation or question. Under the circumstances of this case, Defendants cannot be said to have constructive or imputed knowledge of additional overtime beyond that which Plaintiff reported and for which she received compensation. *Id.* Consequentially, Plaintiff cannot benefit from her own post-employment admission she inaccurately underreported her work hours on her time cards. *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972).

In *Straley v. Ferrellgas, Inc.*, the district court for the Middle District of Florida granted summary judgment for the employer where the plaintiff, like here, had no documentation of any unpaid hours.  2009 WL 10670500, **2-3 (M.D. Fla. Sept. 16, 2009).  There, the Court held that not only that the plaintiff had no sufficient evidence of demonstrating unpaid overtime hours, but also that Defendant had no reason to know of any alleged worked overtime.  On the first element of proof, the plaintiff provided an estimate of unpaid time, based on nothing more than her personal speculation that computer records might reflect her work time.  *Id.* at *2.  Like in *Straley*, here, Plaintiff prepared her own time records and was compensated fully for all time she reported.  *Id.* Also, in *Straley*, there was no evidence of any supervisor telling Plaintiff she could not work overtime, could not report overtime, or edited her time downward to reflect no overtime.  Rather, the situation, like here, was quite the contrary – Plaintiff was paid for all overtime hours reported, she was only asked to substantiate her overtime hours (though always paid), and where she reported additional time (even when reported untimely), Plaintiff was paid.  Further, in *Straley*, like here, the plaintiff admitted no one told her to work overtime hours without reporting them. *Id.* Here, like *Straley*, Plaintiff's sole evidence of unpaid overtime is based solely upon, after the fact, "conclusory statements, personal opinion, and speculation" insufficient to overcome

summary judgment regardless of how Plaintiff seeks to package that alleged evidence.  *Id.*  Here, the undisputed facts are, that the day following her termination, Plaintiff downloaded her time cards for the entire three year statute of limitations period and from her own recollection estimated what her time should have been in over 156 weeks .  Plaintiff, like *Straley*, provides no reason or rationale for failing to provide these alleged unpaid overtime hours when they were worked.  As in *Straley*, "Plaintiff's initial omission of worked hours is key, as it weighs heavily on her belated claim (proffered only after her employment ended) that Defendant should have known that she was initially lying."  *Id.* at *3 (citing *Fletcher v. Universal Tech. Inst., Inc.*, 2006 WL 2297041, at *5 (M.D. Fla. June 15, 2006), where Judge Presnell held:

> An employer does not have knowledge of uncompensated overtime when an employee submits  time sheets showing such overtime did not occur. Further, "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer ... of the overtime work, the employer's failure to pay for the overtime hours is *not* a violation of" the FLSA.

*Id* at *5 (internal quotations omitted).

In *Straley*, the plaintiff was simply "not able to articulate anything beyond her own personal opinion and a recitation of her job duties, with no explanation of why they could not be completed in 40 hours other than her own belief."  *Id.* at *3, e.g., *Cooper v. Southern Co.*, 390 F.3d 695, 745 (11th Cir. 2004) (finding summary judgment appropriate when the plaintiff relied on conclusory assertions based on her subjective belief); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment); *Harvill v. Westward Commun., LLC,*, 433 F.3d 428, 441 (5th Cir. 2005) (affirming summary judgment when plaintiff presented "no evidence of the amount or the extent of hours she worked without compensation"); *Carson v. J Curt Inc.*, 2007 WL 601925, at *2 (N.D. Fla. February 21, 2007) (granting summary judgment for employer when employee disputed time

records only with "vague and conclusory" testimony he worked other hours, and did not "provide any specifics as to which hours he worked in particular weeks or on certain days").

Here, that Plaintiff frequently reported overtime hours for which she received overtime compensation, admits failing to report time now complained to be denied overtime, and failed to complain to Defendants about denied overtime pay during her employment under Defendants' policies is fatal her claims. Plaintiff cannot deliberately underreport her work time and, after her separation from employment, seek to revise her time cards for the prior years to gain a windfall in wage payments. Like *Straley*, Plaintiff simply cannot shift the blame for her own intentional representations on her time records by now asserting that Defendants could have learned she was lying if it had only paid more attention.  *Id.* at *4.  *See also Gaylord v. Miami-Dade County*, 78 F.Supp.2d 1320, 1325 (S.D. Fla. 1999) ("an employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur.").

The Fifth Circuit Court of Appeals addressed a nearly identical situation where the plaintiff alleged that the employer "should have known" that he was working overtime off-the-clock. *Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995) (cited by *Straley*, 2009 WL 10670500, **2-3).  In *Newton*, the Court of Appeals held:

> [i]f we were to hold that the City had constructive knowledge that Newton was working overtime because Freeman had the ability to investigate whether or not Newton was truthfully filling out the City's payroll forms, *we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.* The fact that Freeman had access to the Task Force's activities means that perhaps he could have known that Newton was working overtime hours, but the question here is whether he should have known. In light of the fact that Freeman explicitly ordered Newton not to work overtime and in light of the fact that *Newton admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force's activities, standing alone, is insufficient to support the conclusion that the City should have known that Newton was working overtime*.

*Id.* at 749 (emphasis added).  Here, Plaintiff was instructed to accurately record her time when working from home, and there was no reason Defendants should not have relied upon Plaintiff's report of her own time.  Plaintiff was in the best place to know when and how long she worked and never complained under any of Defendants' policies regarding time recordation and working from home. Like in *Newton*, Defendants may require employee to "adhere to [their] procedures for claiming overtime;" something that Defendants believed Plaintiff had been doing all along and paying her hours and hours of overtime without question.  But Plaintiff contends, with nothing more than anecdotal, conclusory information, that Defendants should have known of additional overtime, and that Defendants may require her to accurately record and report her time.  This does not carry Plaintiff's burden of proof, and summary judgment is appropriate on Plaintiff's claim of unpaid overtime wages under the FLSA.

## C.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S ASSERTED CLAIM FOR FLSA RETALIATION[4]

A *prima facie* case of FLSA retaliation requires a demonstration by the plaintiff of the following: "(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 822-23 (11th Cir. 2008); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000), citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir. 1997).  In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *Id.*, citing *Reich v. Davis*, 50 F.3d 962, 965–66 (11th Cir. 1995). Under the "but

---

[4] Plaintiff admits the only Defendant that employed her at the time of her separation was SP Management Services, Inc aka SGRY SP Management Services, Inc. Dkt. 36-2, P. 1. Accordingly, the only possible Defendant that Plaintiff could entertain a retaliation claim against – which fails – is SP Management Services, Inc aka SGRY SP Management Services, Inc.

for" standard for analyzing retaliatory discharge claims under the FLSA, only those employees who would have suffered exactly the same adverse action even if they had not engaged in FLSA activities will be unprotected.   *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996), *cert. denied*, 520 U.S. 1186. If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext. *Raspanti*, 266 Fed. Appx. at 822-23.

Plaintiff cannot demonstrate that she engaged in any statutorily protected activity prior to her separation. While Plaintiff alleges that she reported to Sturm and Przychocki that Geiger "moved" her November 21, 2015 time, her testimony is devoid of any claim that such "movement" deprived her of overtime.  Further, her only other complaint in this regard is that her time was characterized as PTO -- which is not governed by the FLSA -- and, even so, in the specific week that occurred, she would not have had overtime if the PTO was treated as compensable time.  Any complaint about PTO is not a protected complaint under the FLSA.

Further Plaintiff does not assert that she advanced any protected complaint to anyone in Human Resources or Payroll regarding unpaid overtime compensation prior to the determination that the 1 p.m. to 6 p.m./two-day-a-week school schedule could not be accommodated. To the contrary, the undisputed facts demonstrate that Plaintiff did not complain about failing to receive overtime until her post-separation written complaint submitted on April 30, 2017. Plaintiff cannot demonstrate that she engaged in a protected activity while employed by Defendants or that the inability of Defendants to accommodate her school schedule was causally related to any alleged protected conduct.

Assuming arguendo for this Motion only that Plaintiff engaged in a protected activity (by allegedly complaining about unpaid overtime wages), her retaliation claim still fails because she cannot demonstrate a causal connection between her alleged complaint(s) and the purported

retaliatory action of Defendants not accommodating her school schedule. A plaintiff can satisfy her requisite burden to show she would not have treated in such a way but for her assertion of FLSA rights, if she can prove a "close temporal proximity" between the time her employer learned about her protected activity and the alleged retaliatory conduct. *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820,824 (11th Cir. 2008). This standard requires that the actions be "very close." *Id.* (citing *Clark County Sch. Dist. v. Breden*, 532 U.S. 268, 273 (2001)). A delay of "three to four month[s]" does not suffice. *Id.* (citing *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007)).

Here, Plaintiff claims to have reported to Sturm in November 2015 that Geiger moved her November 21, 2015, time to a different week.  Plaintiff claims she reported the same issue to Przychocki in December 2016.  Finally, Plaintiff reported to Geiger she received PTO for work hours also in December 2016. Viewing the allegations in the light most favorable to the Plaintiff, her latest complaint was December 2016, which was over five (5) months before the decision that the new school schedule could not be accommodated.  Further, of import, Defendants did not terminate Plaintiff.  Rather, Przychocki asked Plaintiff to consider an opportunity to remain employed on a per diem basis in another position for which she was qualified during her schooling. It was Plaintiff who determined that she would leave Defendants' employ.

First, Plaintiff's termination is too attenuated from her alleged protected activity to establish causation based on temporal proximity. *Raspanti*, 266 Fed.Appx.3d at 823 (seven month delay between protected activity and discharge negated causal connection based on temporal proximity). Here, where there is a substantial delay between the protected activity and the adverse action and there is an absence of any other evidence showing causation, the complaint of retaliation fails as a matter of law. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Second, Plaintiff cannot demonstrate that Defendants would have accommodated her school schedule but for her alleged assertion of FLSA rights. *Wolf*, 200 F.3d at 1343.  Plaintiff cannot meet this burden, as she cannot identify any similarly situated allegedly non-complaining Materials Manager for whom Defendants accommodated a day-time class schedule two days a week from 1:00 p.m. to 6:00 p.m. – squarely within working hours.  *See McKenzie*, 94 F.3d at 1478.

Third, Plaintiff's decision to leave Defendants' employment rather than explore the possibility of a per diem position which would have allowed her to attend her class schedule does not rise to the level of a constructive discharge. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Poole v. City of Plantation, Fla*., 2010 WL 4063728, at *7 (S.D. Fla. Oct. 14, 2010) (citing *Bryant v. Jones*, 575 F.3d 1281 (11th Cir.2009) quoting *Munday v. Waste Mgmt. of N. Am., Inc.,* 126 F.3d 239, 244 (4th Cir.1997)).  In such a situation, the employer's conduct must present the employee with only a "Hobson's choice" – take it or leave it. *Rowell v. Bellsouth Corp.*, 2004 WL 5552130, at *3 (S.D. Al. Jan 16, 2004).  "In assessing constructive discharge claims, [the Court does] not consider a plaintiff's subjective feelings about his employer's actions, but whether a reasonable person in the plaintiff's position would be compelled to resign." *Siudock v. Volusia Cnty. Sch. Bd*., 568 F. Appx 659, 664–65 (11th Cir.2014) (alleging constructive discharge under the ADA). "A constructive discharge claim is not a jury question unless a plaintiff presents substantial evidence that employment conditions were intolerable." *Id.* (citing *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir.2002)).

Finally, even if Plaintiff could demonstrate a *prima facie* case, her claim of retaliation still fails because she cannot rebut Defendants' legitimate non-retaliatory reasons for not

accommodating her school scheduling, namely that the centers required a full time Materials Manager. To establish pretext, Plaintiff must prove that "the proffered reason was not the true reason for the employment decision . . . either . . . by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation was unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (internal quotation marks omitted). Plaintiff bears the burden of establishing pretext, and she "must meet the reason proffered head on and rebut it." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007). Plaintiff has not and cannot demonstrate any pretext as to Defendants' decision not to accommodate her schedule.

Accordingly, Plaintiff's claim of retaliation fails, and Defendants are entitled to judgment as a matter of law on this claim.

WHEREFORE, Defendants respectfully request this Court grant summary judgment in their favor as to Plaintiffs' Third Amended Complaint, because there are no disputed issues of material fact, and, based on the record evidence, they are entitled to judgment as a matter of law.

Respectfully submitted,

*/s/ Jennifer Monrose Moore*
WILLIAM E. GROB
Florida Bar No. 0463124
E-mail: william.grob@ogletree.com
JENNIFER MONROSE MOORE
Florida Bar No. 035602
E-mail: Jennifer.moore@ogletree.com
RACHEL A. MORRIS
Florida Bar No. 091498
E-mail: rachel.morris@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida  33602

Telephone: 813.289.1247
Facsimile:  813.289.6530
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2018, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

the following:

Mary E. Lytle
David V. Barszcz
LYTLE & BARSZCZ, P.A.
543 North Wymore Road, Suite 103
Maitland, Florida  32751
E-mail: mlytle@lblaw.attorney
E-mail: dbarszcz@lblaw.attorney

*/s/ Jennifer Monrose Moore*
Attorney

35124264.1